UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH WILKINS,                                  Case No. 16-10134

              Plaintiff,                            Laurie J. Michelson
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Stephanie Dawkins Davis
                                                    United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 17)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On January 14, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Laurie J. Michelson referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 14, 17). Plaintiff also filed a reply in support her motion for summary judgment. (Dkt. 18). The cross-motions are now ready for report and recommendation.

### B.   Administrative Proceedings

On February 22 and March 22, 2013, respectively, plaintiff filed claims for supplemental security income and child's insurance benefits, alleging disability beginning May 1, 2007. (Dkt. 11-2, Pg ID 47). The Commissioner initially denied plaintiff's disability application on July 8, 2013. *Id.* Thereafter, plaintiff requested an administrative hearing, and on September 4, 2014, she appeared with counsel before Administrative Law Judge ("ALJ") Jerome Blum, who considered her case *de novo*. (Dkt. 11-2, Pg ID 66-116). In a November 19, 2014 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at Pg ID 44-61. The ALJ's decision became the final decision of the Commissioner on November 16, 2015, when the Social Security Administration's Appeals Council denied plaintiff's request for review. *Id.* at Pg ID 29-33.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ's Findings

Under the authority of the Social Security Act, the Social Security

2

Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5)). The five-step analysis remains the same. On the alleged date of disability, plaintiff had not yet attained the age of 22 years old. (Dkt. 11-2, Pg ID 49). Plaintiff, a resident of Roseville, Michigan, has some prior work activity in a fast-food restaurant and work at a flower shop, but neither rose to the level of substantial gainful activity. *Id*. Plaintiff has spina bifida, scoliosis and multiple back injuries from a fall as child and an auto accident. (Dkt. 11-2, Pg ID 87, 92, 99).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. *Id*. at 49. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine, scoliosis, and headaches. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at 52. The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform the full range of sedentary work. *Id.* at 58. At step four, the ALJ determined that plaintiff could not perform any past relevant work. *Id*. at 60. At step five, the ALJ concluded that based on an RFC for the full range of sedentary work, considering

3

plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.27 and therefore, she was not under a disability from the alleged onset date through the date of the decision. *Id*. at 60-61.

B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ committed reversible error by finding her mental impairment to be non-severe, even though the record is replete with references to her history of depression, with physical manifestations of "cutting" herself. Plaintiff also contends that the ALJ erred by concluding that "claimant's deafness in the right ear does not significantly limit her ability to perform basic work activity." As the ALJ's opinion notes, on February 25, 2013, plaintiff met with Psychologist Krista Freece, Ph.D. Dr. Freece diagnosed plaintiff with "Pain Disorder due to a General Medical Condition and Psychological Factors," including Dysthymia. (Dkt. 11-7, Report of Krista Freece, Pg ID 382). However, the ALJ gave no weight to Dr. Freece's opinion, because plaintiff failed to follow-up with treatment. (Dkt. 11-2, Pg ID 50). Plaintiff's treating physician also opined that she is suffering from depression, which has resulted from the limitations caused by her physical impairments. (Dkt. 11-8, Pg ID 637). These diagnoses are supported by the testimony of plaintiff, her mother, the functioning report completed by plaintiff, and provide substantial evidence that her RFC is

4

impacted by her mental impairment. Therefore, regardless of whether this impairment is severe, plaintiff contends the ALJ failed to properly analyze her RFC in light of the impact her mental impairment has on her daily activities of living, her social functioning, and her ability to concentrate.

In evaluating plaintiff's mental impairments, the ALJ relied on her perceived daily activities of living, social functioning, and ability to concentrate, while giving little or no weight to the medical evidence in the record, or the testimony of plaintiff or her mother. According to plaintiff, the ALJ's conclusion was based exclusively on the opinion of state disability psychiatrist Dr. Khademian and a consultative examination with Dr. Rudolph. *Id*. at Pg ID 50. The ALJ determined that plaintiff is able to complete most activities of daily living, including living alone and caring for her personal needs. The ALJ also determined that plaintiff has "mild limitation" in the area of social functioning. *Id*. at Pg ID 51. The ALJ also concluded that plaintiff has "mild difficulty" maintaining concentration, based on "claimant's ability to drive, and the claimant's hobbies including photography and photo editing." The ALJ ruled that plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." *Id*. at Pg ID 50. According to plaintiff, this holding contradicts the factual record. Plaintiff's testimony aligned with the statements she made in her

functioning report submitted to the state agency, her testimony is corroborated by her mother's testimony, and the medical record reflects a diagnosis of depression by multiple physicians. The ALJ relied heavily on the function report completed by plaintiff to support the finding that she is capable of taking care of herself and lives alone. Yet, according to plaintiff, the ALJ failed to address plaintiff's statements that her mother has to help her complete most of her daily tasks and chores, undermining the ALJ's position that she has "no more than mild difficulty maintaining her activities of daily living."

Plaintiff points out that the testimony of plaintiff's mother also supports a finding that she suffers from a severe mental impairment, or at least that she suffers from an impairment that impacts her daily activities of living and social functioning. In *Lohr v. Comm'r of Soc. Sec.*, 559 F.Supp.2d 784 (E.D. Mich. 2008), the district court remanded the claim for benefits, based on the ALJ's failure to consider the statements of two of the claimant's former supervisors, who attested that the claimant's ADHD and mood disorder prevented her from maintaining employment. *Id*. at 791. Likewise here, plaintiff contends the ALJ's failure to account for the testimony of her mother is substantial legal error, as it led to the determination that plaintiff's mental impairments are non-severe, and only minimally impact her social functioning.

Critically, plaintiff's mental impairment was also identified by a doctor,

6

who was not even assigned to review her mental health. In 2010, the state agency sent plaintiff for a CE, which was conducted by Dr. Sonia Ramirez with Sierra Medical Group. Dr. Ramirez opined that "there might be some psychological component involved […] I think she should be evaluated by a psychiatrist." (Dkt. 11-7, Report of Dr. Ramirez, Pg ID 320-21). According to plaintiff, the diagnosis of Dr. Freece, together with the opinions of Dr. Grias and Dr. Ramirez, the testimony of plaintiff, and the testimony provided by her mother, all demonstrate that she suffers from a severe mental impairment, which limits and affects her daily activities of living and social interactions. Thus, plaintiff maintains that the ALJ failed to properly assess plaintiff's mental health, which led to an incorrect assessment of her RFC.

In addition, plaintiff argues that the ALJ failed to address her hearing impairment when assessing her RFC. Plaintiff has been deaf in her right ear since birth. (Dkt. 11-2, Pg ID 101). Plaintiff testified that her hearing loss "affects me a lot […] [e]veryone has to sit on the right side of me, I can't have anyone sitting on the left side of me." (Dkt.. 11-2, Pg ID 79). However, plaintiff asserts that the ALJ failed to address plaintiff's testimony about her hearing loss, and how it impacts her RFC. Instead, the ALJ erroneously relied on the report of Dr. Rudolph, who apparently was able to have a normal conversation with plaintiff while she was in the office. (Dkt. 11-2, Pg ID 50). According to plaintiff, her ability to carry on a

conversation in the ideal circumstances and setting of a quiet office with an attentive physician is not probative of whether her hearing loss may impact her RFC. According to plaintiff, this conclusory determination, with no deference for the testimony of plaintiff or her mother, constitutes reversible error.

Next, plaintiff contends that the ALJ's decision to disregard the opinion of her treating physician, as well as the opinions of the two 2014 CEs, constitutes substantial and reversible error. Dr. Grias, plaintiff's treating physician, opined that she suffers from debilitating lower back pain, and has suffered from this condition since falling down the stairs at age twelve. (Dkt. 11-7, Report of Dr. Grias, Ex. 10F, Pg ID 400). Dr. Grias reports that plaintiff has been diagnosed with disc herniations and scoliosis—which she has treated with epidural injections, physical therapy, and narcotic pain medication. *Id.* Dr. Grias opines that the pain associated with these diagnoses limits plaintiff's ability to bend, twist, and stoop, causes pain in her back and legs, and even causes her difficulty with merely bearing her own weight. *Id.* In this same report, Dr. Grias points out that a recent MRI showed two herniated discs with facet hypotrophy and three bulging discs in her spine. *Id.* Dr. Grias opines that plaintiff cannot sustain gainful work activity, and recommends that she be awarded disability benefits. *Id.*

According to plaintiff, the ALJ wrongfully discounted Dr. Grias' opinion, holding that the opinion she provided was not supported by the medical evidence

8

in the record.  (Dkt. 11-2, Pg ID 57).  Plaintiff contends that, the ALJ selectively

and inappropriately highlights evidence that tends to rebut Dr. Grias' opinion,

while ignoring the plethora of evidence in the record that supports plaintiff's

diagnosis and Dr. Grias' opinion.  For example, the ALJ emphasizes a 2009

evaluation with Dr. Minster which stated that plaintiff "exhibited only some

tenderness of the lumbar spine, no pain with flexion and extension of the lumbar

spine."  *Id*. at Pg ID 54.  Further, the ALJ consistently argues that, because

plaintiff lives independently, her pain surely cannot be as severe as her, or her

treating doctors, claim it is.  *Id*. at Pg ID 55.  According to plaintiff, this is a clear

case of an ALJ substituting his own opinion, for the opinions of the claimant's

treating physician.

　　　According to plaintiff, the medical records in this case support Dr. Grias'

conclusions, and the ALJ was only able to reach his conclusion based on a

willingness to ignore plaintiff's long-history of chronic and severe pain related to

significant back issues.  Plaintiff's severe back pain dates back to a fall when she

was twelve, and was again exacerbated in a car accident in 2007, before her 22nd

birthday.  (Dkt. 11-7, Pg ID 319).  For example, on October 8, 2009, Dr. Minster

wrote that plaintiff was suffering from herniated discs at L-4 and L-5, and

recommended beginning epidural steroid injections to alleviate pain.  (Dkt. 11-7,

Report of Dr. Minster, Pg ID 309).  Instead of giving deference to these findings,

the ALJ only highlighted that plaintiff exhibited "no motor or sensory deficits, and no nerve root tension signs." *Id*. Of course, the ALJ's interpretation of the medical records cannot supplant the judgment of Dr. Minster, who found herniation of the discs, and recommended multiple forms of treatment. *Id*. Moreover, the ALJ does not cite anything that undermines her claims of pain. On June 11, 2009, Dr. Minster reviewed plaintiff's MRI, and found "disc desiccation and narrowing of disc space at L4-5." *Id*. at Pg ID 310. At that time, Dr. Minster recommended non-surgical treatment for Ms. Wilkins. *Id*. Instead of addressing the opinion of Dr. Minster, the recommended course of treatment, and plaintiff's complaints regarding pain, the ALJ instead invoked a 2009 MRI that showed "[O]nly minimally compressed disc herniation at L4-5." (Dkt. 11-2, Pg ID 54). According to plaintiff, the ALJ lacks the appropriate expertise to determine that minimal herniation could not produce the pain plaintiff continues to suffer, or prevent her from engaging in SGA.

Plaintiff also maintains that the ALJ is not qualified to clinically correlate the MRI, and inappropriately downplayed the severity of plaintiff's disability throughout the opinion. For example, the ALJ notes that a 2012 MRI indicated "only bulging discs at T9-10 and T11-12." *Id*. at Pg ID 55. Again, the ALJ does not have the expertise to unilaterally determine that this MRI shows that plaintiff is not substantially limited by her disability. Rather, this evidence

10

shows the opposite, a medically diagnosed impairment that is clearly capable of producing the pain and suffering plaintiff has to deal with on a daily basis, as her treating doctors have opined, and prescribed her daily narcotics for.

Following plaintiff's hearing, the ALJ sent her for additional CEs. According to plaintiff, unsatisfied with the results of the CE's, the ALJ gave little weight to these opinions. Despite the record containing the opinions of at least three doctors, Grias, Alviar, and Jurado, who opined that plaintiff is limited by her impairments, as well as the opinion of Dr. Ramirez, who opined that she should seek psychiatric help, the ALJ found the CE's were not supported by the medical evidence. To the contrary, plaintiff insists the medical evidence supports a finding that plaintiff suffers from significant and severe back pain since at least 2007, and, in accordance with the opinions of her treating physician and two CEs, she cannot sustain SGA.

Following her hearing, plaintiff first consulted with CE Dr. Alviar. Dr. Alviar opined that she is significantly limited in her day-to-day functioning, and in particular, opined that her physical ailments significantly limit her ability to perform physical tasks. More particularly, Dr. Alviar found plaintiff limited to lifting only ten pounds occasionally, and no more. (Dkt. 11-8, Report of Dr. Alviar, Pg ID 646). Dr. Alviar also opined that plaintiff cannot comfortably sit, stand, or walk for more than ten minutes at a time. *Id*. at PG ID 647. Dr. Jurado,

11

the second CE, made similar findings, reporting that an MRI of plaintiff's back

showed disc herniation at multiple levels from L4 to S1.  (Dkt. 11-8, Report of Dr.

Jurado, Pg ID 655).  Like Dr. Alviar, Dr. Jurado found that plaintiff cannot

comfortably stand, sit, or walk for more than ten minutes at a time.  *Id*. at Pg ID

661.  According to plaintiff, these limitations require a finding that plaintiff's RFC

is less than the full range of sedentary and thus she should be found disabled.  20

C.F.R. § 404.1546.  Plaintiff argues that the ALJ improperly substituted his

opinion for the opinions of physicians who examined plaintiff.

Next, plaintiff argues that the ALJ's failure to account for her

non-exertional limitations, including her deafness in one ear and history of mental

impairments, also led to her RFC being misclassified.  The result was an improper

determination that plaintiff can engage in the full range of sedentary work.  The

ALJ then applied the Medical Vocational Rules ("Grids"), which directed a

finding of not disabled.  However, plaintiff contends that it is error to apply the

grids, where non-exertional limitations prevent a claimant from performing the full

range of sedentary work. *Todd v. Apfel*, 8 F.Supp.2d 747, 756 (W.D. Tenn. 1998).

Instead, where the non-exertional impairment limits a claimant's ability to perform

the full range of sedentary work, "the ALJ would have to rely on expert testimony

to establish the claimant's ability to perform other work."  *Id*. at 757.  Here,

substantial evidence in the record shows that plaintiff suffers from mental

12

impairments, hearing loss, and pain that limit her ability to perform the full range of sedentary work. Accordingly, plaintiff argues that the Commissioner failed to meet its burden of showing she can perform substantial gainful activity.

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, plaintiff's step two argument is "misguided." *Anthony v. Astrue*, 266 Fed. Appx 451, 457 (6th Cir. 2008). Like the adjudicator in *Anthony*, the ALJ here specifically found that plaintiff had both severe and nonsevere impairments. (Dkt. 11-2, Pg ID 49-52). As in *Anthony* – and as the ALJ here explicitly acknowledges (Dkt. 11-2, Pg ID 48) – this finding "caused the ALJ to consider [plaintiff's] severe and nonsevere impairments in the remaining steps of the sequential analysis." *Id*. As in *Anthony*, "[t]he fact that some of [Plaintiff's] impairments were not deemed to be severe at step two [of the sequential analysis] is therefore legally irrelevant." *Id*.

The Commissioner points out that the ALJ adopted Dr. Khademian's opinion that plaintiff had only mild limitation in her activities of daily living. (Dkt. 11-2, Pg ID 50, referring to Dkt. 11-3, Pg ID 141). According to the Commissioner, the ALJ was entitled to do so because State agency psychiatrists such as Dr. Khademian are "highly qualified . . . experts" in the evaluation of disability under the Act. The governing regulations squarely authorize adjudicators to rely on claimants' daily activities.

13

The ALJ also adopted Dr. Khademian's opinion that plaintiff had only mild limitation in concentration, persistence, or pace.  (Dkt. 11-2, Pg ID 51, referring to Dkt. 11-3, Pg ID 141). Moreover, the ALJ supportably found that Dr. Khademian's opinion was consistent with the fact that Dr. Rudolph examined plaintiff, then opined, inter alia, that she would "'be able to maintain attention and concentration for extended periods'" (Dkt. 11-2, Pg ID 51, quoting Dkt. 11-7, Pg ID 486).  The ALJ also supportably found that the admissions by plaintiff and her mother that plaintiff drove, enjoyed photography and photo editing, enjoyed reading and listening to music, and enjoyed watching television all "indicate a capacity for sustained concentration."  (Dkt. 11-2, Pg ID 51, referring to Dkt. 11-6, Pg ID 238, 262, 281; Dkt. 11-7, Pg ID 484).  Third, the ALJ found (Dkt. 11-2, Pg ID 52) – as did Dr. Khademian (Dkt. 11-3, Pg ID 141) – that plaintiff had no extended episodes of decompensation.

Next, the ALJ found that plaintiff had only mild limitation in social functioning.  (Dkt. 11-2, Pg ID 51).  According to the Commissioner, substantial evidence supports that finding. As the ALJ correctly states (Dkt. 11-2, Pg ID 51), plaintiff admitted that she had a boyfriend (see, e.g.,, Dkt. 11-6, Pg ID 259), she was able to shop in stores (Dkt. 11-6, Pg ID 237, 261, 280), she spent time with her mother and her boyfriend (see, e.g., Dkt. 11-6, Pg ID 238), and she frequently talked on the phone.  (Dkt. 11-6, Pg ID 281).  As the ALJ also correctly states, Dr.

Rudolph examined plaintiff, then opined that she was able to "'meet and interact with the public,'" "'get along with supervisors and coworkers,'" "'work in coordination with or in close proximity to others without being distracted by them,'" "'maintain socially appropriate behavior,'" and "'adhere to basic standards of neatness and cleanliness.'" (Dkt. 11-2, Pg ID 51, quoting Dkt. 11-7, Pg ID 486-487).

Although plaintiff asserts that the ALJ improperly discounted the credibility of testimony provided by plaintiff and her mother (Pl's Mem. 20, 21), the Commissioner maintains that she does not make any meaningful attempt to establish the accuracy of that assertion. The Commissioner notes that this argument "face[s] an uphill battle," because credibility findings are entitled to such "great weight and deference" that they are "virtually 'unchallengeable.'" With respect to plaintiff's assertion that her mother is "a high ranking and credible Federal Agent for the Internal Revenue Service" (Pl's Mem. 22), the Commissioner observes that, an adjudicator is entitled to discount testimony provided by a claimant's close relative on the ground that she "was not a disinterested third party witness" and "had a financial interest in" the claimant's application for benefits. *Hyson v. Comm'r of Soc. Sec.*, 2013 WL 2456378, at *20 (N.D. Ohio June 5, 2013) (affirming denial of benefits). With respect to plaintiff's assertion that "[t]he ALJ failed to address [her] statements that her mother has to

help her complete most of her daily tasks and chores" (Pl's Mem. 22), the single

page of the transcript that plaintiff cites (Pl's Mem. 13, citing Dkt. 11-6, Pg ID

235) mentions neither plaintiff's mother nor "most of [Plaintiff's] daily tasks and

chores" and, in any event, "it is well settled that '[a]n ALJ can consider all the

evidence without directly addressing in his written decision every piece of

evidence submitted by a party.'"

　　　According to the Commissioner, plaintiff inaccurately characterizes the

decision when she asserts that the ALJ "completely fails to address [Plaintiff's]

hearing impairment."  (Pl's Mem. 24).  To the contrary, the ALJ explicitly

addressed that impairment:

> [Plaintiff] testified that she was born with deafness in the
> right ear.  However, [Plaintiff] has not required any
> treatment due to deafness.  Additionally, none of the
> evaluating physicians have indicated any  limitations
> communicating with [Plaintiff]. Also, on June 26, 2013,
> Dr. Rudolph noted that [Plaintiff] was able to respond to
> conversational tones in an office setting without
> difficulty.

(Dkt. 11-2, Pg ID 50, citing Dkt. 11-7, Pg ID 486).  Significantly, plaintiff and her

mother both repeatedly admitted that plaintiff's impairments did not affect her

ability to hear.  (Dkt. 11-6, Pg ID 239, 263, 282).  It suffices to observe that a

vocational expert ("VE") testified at the hearing that there are a significant number

of jobs that a person such as plaintiff could perform even if she were limited to

16

"office-type work" (Dkt. 11-2, Pg ID 109-111) – i.e., the same setting in which Dr. Rudolph observed that plaintiff was able to respond to conversational tones without difficulty.  (Dkt. 11-7, Pg ID 486).  The Commissioner also points out that plaintiff does not assert or establish that her depression and/or her hearing impairment caused any specific, significant, and work-related functional limitations.

Here, the ALJ found that plaintiff retained the RFC to perform the full range of sedentary work and the Commissioner maintains that substantial evidence supports that finding.  Plaintiff challenges the RFC finding on the ground that the ALJ failed to properly consider the opinions provided by Drs. Grias, Alviar, and Jurado.  As a threshold matter, by finding that plaintiff was capable of sedentary work, the ALJ adopted Dr. Jurado's opinion that plaintiff was capable of prolonged sitting and moderate amounts of standing and walking.  (Dkt. 11-2, Pg ID 59, referring to Dkt. 11-8, Pg ID 661).  It is true, as Plaintiff states, that "Dr. Grias opines that [Plaintiff] cannot sustain gainful work activity, and recommends that she be awarded disability benefits." (Pl's Mem. 26, referring to Dkt. 11-7, Pg ID 400).  However, it is equally true, as the ALJ correctly states (Dkt. 11-2, Pg ID 58), that Dr. Grias' "determination regarding [Plaintiff's] employability is not a medical conclusion but an opinion on the ultimate issue of disability, which is an issue to be decided by the Commissioner."  (Dkt. 11-2, Pg ID 58); SSR 96-5p,

1996 WL 374183, at *3.  The ALJ discounted the remaining opinions provided by Drs. Grias, Alviar, and Jurado to the extent that they suggested limitations beyond those set forth in the RFC finding.  (Dkt. 11-2, Pg ID 53, 58-59).  He did so based on his finding that those opinions were not consistent with the record as a whole and adjudicators are entitled to discount opinions based on such findings.  Because the ALJ discounted the pertinent opinions by Drs. Grias, Alviar, and Jurado on the ground that they were not consistent with the record as a whole (Dkt. 11-2, Pg ID 58-59), it bears emphasis that those doctors expressed many of those opinions by making checkmarks on pre-printed forms.  It is well settled that such checkmarks are not entitled to significant weight.   Indeed, the Tenth Circuit states that checklist forms like the ones here "are not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (citing Third Circuit authority).  Plaintiff emphasizes the opinions by Drs. Alviar and Jurado that plaintiff could sit, stand, or walk for only ten minutes at one time (Pl's Mem. 30, referring to Dkt. 11-8, Pg ID 647 & 661; see also Pl's Mem. 32-33).  Although the pre-printed forms on which the doctors expressed those opinions asked them to identify the supportive findings, Drs. Alviar and Jurado failed to do so.  (Dkt. 11-8, Pg ID 647 & 661).  Moreover, according to the Commissioner, those opinions simply regurgitated plaintiff's subjective complaints (Dkt. 11-8, Pg ID 639 & 653), and a doctor adds nothing to the probative value of subjective complaints when she "merely

18

regurgitates" them in a document. *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (when a doctor "merely regurgitates [the claimant's] self-described symptoms," that "is not a 'medical opinion' at all").

Plaintiff asserts that the ALJ "play[ed] doctor" by evaluating plaintiff's physical limitations in light of her admission that she lived independently (Pl's Mem. 27, referring to Dkt. 11-2, Pg ID 55). The Commissioner characterizes plaintiff's assertion as a red herring, because the ALJ explicitly stated that he gave "significant weight" to Dr. Ramirez' opinion that plaintiff's physical examination was unremarkable (Dkt. 11-2, Pg ID 55, referring to Dkt. 11-7, Pg ID 320). In any event, it does not require any special medical expertise to understand the significance of the fact that plaintiff lived independently.

The Commissioner argues that plaintiff also inaccurately characterizes the decision when she asserts that the ALJ "ignore[d]" plaintiff's allegations about her pain (Pl's Mem. 27). To the contrary, the ALJ explicitly and repeatedly acknowledged those allegations. (Dkt. 11-2, Pg ID 50, 53, 54, 55, 56, 57, 58, 59). Moreover, the ALJ accounted for plaintiff's alleged pain by limiting her to sedentary work. Disability "'requires more than the mere inability to work without pain.'" *Bailey v. Comm'r of Soc. Sec.*, 623 F.Supp.2d 889, 902 n. 21 (W.D. Mich. 2009) (collecting authority from Second, Fifth, Sixth, Seventh, and Tenth Circuits). This kind of assertion "is seldom successful because crediting it would

19

require a court to re-weigh evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014); citing *White v. Comm'r of Soc.Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("'[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.'").

Plaintiff emphasizes Dr. Grias' statement that plaintiff had unspecified limitations on her abilities to bend, twist, and stoop (Pl's Mem. 26). Yet, this statement neither quantifies nor otherwise describes plaintiff's functional limitations. It is thus "too vague to lend any insight into [Dr. Grias'] opinions as to [Plaintiff's] specific abilities." *Bruce v. Comm'r of Soc. Sec.*, 2010 WL 5932326, at *8 (E.D. Mich. Dec. 9, 2010) (Mag. J.), adopted by 2011 WL 833792 (March 4, 2011). Significantly, as the ALJ states, Dr. Ramirez reported that plaintiff exhibited no limitations regarding bending (Dkt. 11-2, Pg ID 55 referring to Dkt. 11-7, Pg ID 320). Moreover, the sedentary work reflected in the RFC finding does not require significant stooping.

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

20

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    B.    <u>Analysis</u>

        1.    Step two and non-exertional limitations at step five

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act...." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007). A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include: (1) physical functions such as

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). The purpose of step two is "to screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009). If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where

25

ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

Notably, the mere fact that a  plaintiff carries a particular diagnosis does not, standing alone, equate to a severe impairment.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition.").  Rather, at step two, plaintiff must show that her mental impairment and one-sided deafness were "severe," which means they significantly limit her physical or mental ability to do basic work activities. Notably, here plaintiff points to no medical opinions in the record or other evidence suggesting that her hearing loss or mental impairment limited her or imposed any work-related limitations more than that  found by the ALJ. Therefore, any error that might exist was entirely harmless.  *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11, 2016) (While the plaintiff pointed to evidence that he was diagnosed as morbidly obese, the court concluded that this evidence did nothing to demonstrate that his obesity imposed any additional work-related limitations, and therefore, even if the court assumed that the ALJ erred in failing to find that the plaintiff's obesity constituted a severe impairment, the error did not call into question the substantiality of the

26

evidence supporting the ALJ's decision.).

Additionally, plaintiff does not suggest that either impairment eroded the

occupational base for sedentary work. As to plaintiff's hearing loss, it does not

appear that the ALJ committed reversible error in concluding that this impairment

had little or no impact on plaintiff's ability to perform sedentary work. Notably,

SSR 85-15 states:

> Communication is an important factor in work. The
> inability to hear, because it vitally affects
> communication, is thus of great importance. However,
> hearing impairments do not necessarily prevent
> communication, and differences in types of work may be
> compatible with various degrees of hearing loss.
> Occupations involving loud noise, such as in printing,
> have traditionally attracted persons with hearing
> impairments, whereas individuals with normal hearing
> have to wear ear protectors to be able to tolerate the
> working conditions. On the other hand, occupations such
> as bus driver require good hearing. There are so many possible medical variables of
> consultation of vocational reference materials or the assistance of a VS is often
> necessary to decide the effect on the broad world of work.

Social Security Ruling 85-15, Soc. Sec. Rep. Serv. 343, 1985 WL 56857, at *8

(Jan. 1, 1985). SSR 96-9P states:

> Since all work environments entail some level of noise,
> restrictions on the ability to work in a noisy workplace
> must be evaluated on an individual basis. The unskilled
> sedentary occupational base may or may not be
> significantly eroded depending on the facts in the case
> record. In such cases, it may be especially useful to
> consult a vocational resource.

27

Social Security Ruling 96-9P, 1996 WL 374185, at *9 (S.S.A. July 2, 1996).   As

explained in *Ramsdell v. Comm's of Soc. Sec.*, 2016 WL 4203896, *2 (E.D. Tex.

2016), SSR 85-15 makes it clear that consultation of vocational reference

materials or a vocational expert may in some circumstances be necessary, but is

not required. SSR 85-15, 1985 WL 56857, at *8.  Similarly, SSR 96-9P does not

mandate use of a vocational expert at step five even where a limitation or

restriction on noise is present. SSR 96-9P, 1996 WL 374185, at *9.  Thus, in

*Ramsdell*, the court concluded that SSR 85-15 and SSR 96-9P supported the

conclusion that an ALJ may still use the GRIDS to direct a finding of not disabled,

in the absence of vocational expert input, so long as sufficient medical evidence

exists to support such use.  *Id*. citing *Bruce v. Astrue*, 2011 WL 4435301, at *9-11

(N.D. Tex. Sept. 7, 2011), report and recommendation adopted, 2011 WL 4439503

(N.D. Tex. Sept. 23, 2011) (Stating that ALJ properly relied on Medical-

Vocational Guidelines, SSR 85-15, and medical evidence in finding claimant was

not disabled at step five); *see also Ruiz v. Comm'r of Soc. Sec.*, 2011 WL 837183,

*7 (E.D. Ca. 2011) (No error relying on grids at step five where the record

demonstrates the plaintiff does not need hearing assistance in her daily activities;

she did not use hearing assistance devices during the hearing nor did any one

present describe any issue with plaintiff's ability to hear or communicate during

the proceedings; the plaintiff's hearing condition was only listed as mild or

28

moderate in medical records and the medical records, when appearing to address plaintiff's hearing and work, mainly note that plaintiff needs to use protective head gear or avoid loud noises.).  Similarly, plaintiff points to no evidence in the medical records suggesting that her hearing loss limited her in any significant way or affected her ability to work.  Thus, the ALJ did not err by relying on the grids because plaintiff's hearing loss does not appear to have eroded the occupational base for sedentary work.

Plaintiff's argument pertaining to her mental impairment is also flawed.  To begin with, plaintiff points to no medical opinions in the record suggesting that she was more functionally limited by her mental impairments than as found by the ALJ when he conducted his review under the "B" and "C" Criteria.  Rather, plaintiff merely argues that "substantial evidence in the record shows that plaintiff suffers from mental impairments, hearing loss, and pain that limit her ability to perform the full range of sedentary work."  (Dkt. 14, Pg ID 703).  Plaintiff does not supply any foundation in the medical records to suggest that she was more limited than the ALJ found or that these limitations affected the occupational base such that the ALJ was required to utilize the testimony of a vocational expert, rather than using the grids.  Therefore, the undersigned finds no error.

2.    Medical Opinions/Physical RFC

Plaintiff next claims that the ALJ discounted the opinion of her treating physician regarding the disabling nature of her limitations. An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"). And, an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than one from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Commissioner may not disregard opinions of a consulting physician that are favorable to a claimant. *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983).

Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)). An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that

30

doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194;

*see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio

2011) ("An ALJ is not permitted to substitute her own medical judgment for that

of a treating physician and may not make her own independent medical

findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio

2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion

without relying on other medical evidence or authority in the record."). In other

words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony,

or to choose between properly submitted medical opinions, the ALJ cannot

substitute his [or her] own lay 'medical' opinion for that of a treating or examining

doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio

2011).  This is so even though the final responsibility for the RFC determination is

an issue reserved to the Commissioner.  *Allen*, 2013 WL 5676254, at *15.

 In this case, however, plaintiff's treating physician did not offer any medical

opinions regarding her functional limitations.  The Commissioner correctly points

out that Dr. Grias' "determination regarding [Plaintiff's] employability is not a

medical conclusion but an opinion on the ultimate issue of disability, which is an

issue to be decided by the Commissioner." (Dkt. 11-2, Pg ID 58); SR 96-5p, 1996

WL 374183, at *3.  Thus, the ALJ did not err in not giving weight to this opinion.

In addition, the undersigned agrees with the Commissioner that Dr. Grias'

31

statement that plaintiff had unspecified limitations on her abilities to bend, twist, and stoop does not sufficiently quantify plaintiff's functional limitations.  It is thus "too vague to lend any insight into [Dr. Grias'] opinions as to [Plaintiff's] specific abilities." *Bruce v. Comm'r of Soc. Sec.*, 2010 WL 5932326, at \*8 (E.D. Mich. Dec. 9, 2010), adopted by 2011 WL 833792 (March 4, 2011).  Notably, sedentary work "entails no significant stooping." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10; 1983 WL 31251 (SSA 1983).  In the view of the undersigned, plaintiff has not shown that the ALJ violated the treating physician rule in his assessment of Dr. Grias' foregoing opinions.

Dr. Grias also opined that plaintiff is unable to sit, stand, or walk for "significant periods of time" and that her use of strong pain medications precluded work.  (Dkt. 11-7, Pg ID 400).  Dr. Grias further opined that plaintiff is unable to tolerate the sitting involved in sedentary work.  (Dkt. 11-8, Pg ID 637).  The ALJ gave these assessments little or no weight because they were inconsistent with the record as whole.  The ALJ specifically opined:

> Although Dr. Grias is the treating physician, this assessment is inconsistent with the prior evaluations by Dr. Grias, which consistently indicated that the claimant was independent with her basic and light advanced activities of daily living, was able to drive for up to one hour at a time without difficulty, and exhibited good functional range of motion of the cervical, thoracic, and

32

> lumbar spine. Additionally, the claimant consistently
> exhibited 5/5 strength in all the extremities, negative
> straight leg raising bilaterally, and no neurological
> deficits. [Dkt. 11-2, Pg ID 57].
>
> <div align="center">* * *</div>
>
> However, this assessment is given little weight because it
> is inconsistent with the record as a whole. Dr. Grias's
> own chart notes consistently indicate that the claimant
> exhibits good functional range of motion of the cervical
> and lumbar spine, good strength in all the extremities,
> and no neurological deficits. Additionally, Dr. Grias
> never noted in the chart notes any allegations of
> medication side effects. Allegations of medication side
> effects must be corroborated by objective medical
> evidence. Dr. Grias never noted any allegations of
> medication side effects. Moreover, no other evaluating
> physician noted medication side effects. Additionally,
> the claimant's activities of daily living are not consistent
> with allegations of disabling side effects to medications.
> The claimant is able to drive, care for her personal needs,
> use the computer, and was able to return to school, all of
> which are inconsistent with medication side effects.
> [Dkt. 11-2, Pg ID 58].

In the view of the undersigned, the ALJ gave more than sufficient reasons for his

treatment of Dr. Grias' medical opinions.

With respect to Dr. Jurado, the ALJ rejected his opinions regarding

plaintiff's lifting and carrying limitations as inconsistent with the medical records,

but concluded that "the objective clinical findings indicate that the claimant is

capable of prolonged sitting and moderate amounts of standing and walking,

which are consistent with the assessment by Dr. Jurado." (Dkt. 11-2, Pg ID 59).

With respect to rejecting Dr. Jurado's lifting limit of 50 pounds, the ALJ imposed

<div align="center">33</div>

a 10 pound lifting requirement based on "radiographic findings confirm[ing] a herniated disc in the cervical spine." *Id*. The Commissioner contends that Dr. Jurado concluded that plaintiff can sit for extended periods of time, consistent with sedentary work, citing Dkt. 11-8, Pg ID 661. However, while Dr. Jurado concluded that plaintiff could sit for up to four hours per day, he also opined that plaintiff could only sit, stand or walk for 10 minutes at a time. *Id*. Notably, being able to sit for four hours per day is not consistent with the Commissioner's definition of sedentary work. If plaintiff is limited to sitting four hours per day, plaintiff *cannot* perform sedentary work as defined by the Commissioner. A "sedentary" range is generally associated with sitting for about six hours in an eight-hour workday. *Sorrell v. Comm'r of Soc. Sec*., — Fed. Appx. — ; 2016 WL 4245467, 8* (6th Cir. 2016) (citing SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (noting that in a sedentary range "[s]itting would generally total about 6 hours of an 8-hour workday"); *see also Mager v. Comm'r of Soc. Sec*., 145 F.3d 1332, at *2 n. 2 (6th Cir. 1998) (table). The ALJ does not address or reconcile this aspect of Dr. Jurado's opinions.[1]

This is particularly troubling because Dr. Jurado's opinion is consistent, in pertinent part, with Dr. Alviar, who also examined plaintiff after the hearing.

---

[1] Notably, Dr. Jurado's opinion in this regard cannot be explained away as merely a regurgitation of plaintiff's self-reported limitations.

(Dkt. 11-8, Pg ID 639-651).   Dr. Alviar opined that plaintiff could only sit, stand, and walk for 10 minutes at a time and could do only one hour of each in an eight-hour day.  (Dkt. 11-8, Pg ID 647).   The ALJ gave this assessment little weight because it was inconsistent with the record as whole.   Specifically, the ALJ pointed out that:

> The claimant consistently exhibits good strength in all the extremities, no muscle atrophy, and no neurological deficits, which are inconsistent with allegations of disabling pain and inactivity.  Additionally, the claimant is able to drive for up to one hour, able to maintain her basic and light advanced activities of daily living, and was able to return to school, all of which indicate a capacity for sitting, standing, and walking for more than one hour a day.

(Dkt. 11-2, Pg ID 58-59).  Yet, all of the medical opinions in this record indicate that plaintiff has a significant limitation in her ability to sit, which is required to perform the full range of sedentary work.[2]

As such, we are left with a circumstance where the ALJ did not rely on any

---

[2]  The undersigned is not persuaded by the Commissioner's arguments regarding the check box forms completed by the Ces since here, the forms are accompanied by a narrative report.  Moreover, the ALJ did not cite this as a reason for giving the opinions limited weight.  To the extent that the Commissioner's argument is a "post-hoc" rationalization for the ALJ's treatment of the CEs, the Court notes that it "may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)).  "Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

medical opinions in concluding that plaintiff was able to perform the full range of sedentary work and was not limited in any way in her ability to sit.  Importantly, as noted *supra* at p. 31,  in weighing the medical evidence ALJs should avoid succumbing to the temptation to play doctor and make their own independent medical findings.  Further, the ALJ cannot substitute her own law medical opinion(s) for those of a treating or examining doctor.  Here, the ALJ can point to no medical opinion supporting plaintiff's ability to sit for the six hours per day required for sedentary work.

Although an ALJ  retains the right to decide certain issues, such as a claimant's RFC, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion

36

supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  Thus, even if the ALJ was cognizant of Dr. Jurado's restriction to four hours of sitting, his rejection of it is not supported by the substantial evidence.  Consequently, the undersigned concludes that this matter should also be remanded so that the ALJ can reconsider the medical opinions regarding plaintiff's ability to sit.  Given the foregoing conclusions, the ALJ will also have to re-evaluate plaintiff's credibility and may need to consult a vocational expert regarding the step five analysis.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 16, 2017

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

38

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 16, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>